**In re BASIS YIELD ALPHA FUND (MASTER), Debtor in a Foreign Proceeding.**

**No. 07–12762(REG).**

United States Bankruptcy Court, S.D. New York.

Jan. 16, 2008.

Pillsbury Winthrop Shaw Pittman LLP, by Karen Dine, David Crichlow (argued), Robyn Schneider, Jerry Hall, New York, NY, for Joint Provisional Liquidators.

Cleary Gottlieb Steen & Hamilton LLP, by Mitchell Lowenthal, Lindsee Granfield, New York, NY, for Citigroup Global Markets Limited.

## DECISION AND ORDER ON MOTION FOR SUMMARY JUDGMENT SEEKING RECOGNITION AS FOREIGN MAIN PROCEEDING

ROBERT E. GERBER, Bankruptcy Judge.

In this case under chapter 15 of the Bankruptcy Code, petitioners Hugh Dickson, Stephen John Akers, and Paul Andrew Billingham—the Joint Provisional Liquidators ("JPLs") of Basis Yield Alpha Fund (Master) (In Provisional Liquidation) ("Basis Yield") in a proceeding in the Cayman Islands—by their petition seek recognition in this Court of Basis Yield's liquidation in that country as a "foreign main proceeding," under section 1517(b)(1) of the Code, or alternatively as a foreign nonmain proceeding, under section 1517(b)(2). With no objections to recognition having been filed,[1] the JPLs move for summary judgment granting the relief sought under the first prong of their petition, recognition of the Cayman Islands Proceeding as a foreign main proceeding.

 The motion raises the issues as to whether failures to object by stakeholders divest the Court of the power to make its own determination as to whether the requirements of Bankruptcy Code section 1517 have been satisfied, and whether a presumption embodied in section 1516 of the Code, discussed below, precludes the Court from considering the actual facts— under circumstances where the JPLs' showing has been strikingly silent and where the few facts that are known raise issues as to their position and make further inquiry appropriate. For reasons set forth below, the Court concurs with the observations of Judge Lifland that recognition under section 1517 is not a rubber stamp exercise.[2] Rather, consistent with Judge Lifland's determination and the views of the drafters of chapter 15 and the UNCITRAL Model Law on which chapter 15 was based, the Court rules that a court engaging in a recognition determination under section 1517 is not bound by parties' failures to object; may, if it is so advised, consider any and all relevant facts (including facts not yet presented); and that the circumstances here make further factual inquiry necessary and appropriate.

Accordingly, summary judgment is denied.

---

1. As noted below, one creditor, Citigroup Global Markets Ltd. ("Citigroup"), objected to the form of the proposed recognition order, but did not object to recognition itself.

2. *In re Bear Stearns High–Grade Structured Credit Strategies Master Fund, Ltd.,* 374 B.R. 122, 130 (Bankr.S.D.N.Y.2007) ("*Bear Stearns*"). *See also id.* at 126 ("However, recognition under section 1517 is not to be rubber stamped by the courts. This Court must make an independent determination as to whether the foreign proceeding meets the definitional requirements of sections 1502 and 1517 of the Bankruptcy Code.").

*Facts*

Basis Yield was incorporated in the Cayman Islands on September 14, 2005 as an exempted limited liability company pursuant to section 193 of the Companies Law (2004 Revision) of the Cayman Islands (the "Cayman Companies Law"),[3] and maintains its "registered office" in that country.[4] Prior to the commencement of the Cayman Islands Proceeding, Basis Yield invested in a variety of structured credit securities, including asset-backed securities, mortgage-backed securities, collateralized debt obligations, and collateralized loan obligations.

Following the well-publicized volatility in the global credit markets, and particularly the marked rise in sub-prime lending defaults here in the United States, Basis Yield suffered a significant devaluation of the assets in its portfolio. This devaluation precipitated margin calls from Basis Yield's trade counterparties, which Basis Yield was unable to satisfy. As a result, Basis Yield was issued several default notices and ultimately its trade counterparties exercised their rights under their respective agreements to seize or sell those assets of Basis Yield that had been subject to repurchase agreements or in which they held security interests.

On August 27, 2007, the shareholders of Basis Yield authorized the filing of a petition to liquidate the fund under the provisions of the Cayman Companies Law. The shareholders further resolved to apply for the appointment of the petitioners to serve as JPLs for Basis Yield, subject to the supervision of the Grand Court of the Cayman Islands. On August 28, 2007, that court entered an order appointing the JPLs as Basis Yield's joint provisional liquidators.[4a]

As set forth in the petition,[5] Basis Yield is registered in the Cayman Islands, and maintains its registered office there. Basis Yield is the master fund in a master-feeder structure. Its only "investors" are two feeder funds, Basis Yield Alpha Fund (US) ("BYAF (US)") and Basis Yield Alpha Fund ("BYAF"), both domiciled in the Cayman Islands.[6] Fortis Prime Fund Solutions (Cayman) Ltd., a Cayman Islands company, serves as the administrator to both Basis Yield and each of its feeder funds.[7] Pac–Rim Investments, Ltd., also a Cayman Islands company, is Basis Yield's investment manager.[8] Basis Yield's pre-

---

**3.** Akers Decl. ¶ 2.

**4.** *Id.* ¶ 1.

**4a.** The Court has been advised that after the filing of the papers on this motion, the JPLs became "Joint Official Liquidators," by order of the Grand Court of the Cayman Islands. That does not affect the statutory or caselaw analysis set forth below.

**5.** In accordance with the Court's Case Management Order # 1, dated Sept. 5, 2007, uncontroverted factual allegations in the petition have been taken as true. The petitioners also submitted an affidavit supporting allegations made in the petition, providing an additional basis for taking those allegations as true. But neither addresses factual matters that this Court requested the parties to address in an order it entered early in this case, and of course neither is conclusive with respect to matters of law.

**6.** Supplement to Verified Petition ¶ 3. "Investors" is not defined or explained, though another document suggests it means shareholders. *See* Verified Petition ¶ 5. The JPLs have failed to provide any meaningful information concerning Basis Yield's "beneficial investors," the term they use to refer to the investors in the feeder funds and the ultimate equity stakeholders of Basis Yield.

**7.** What Fortis Prime Fund Solutions does as "administrator" is not described, however, nor do the JPLs say where its employees do whatever they do.

**8.** What Pac–Rim Investments does as "investment manager" is not described, however, nor do the JPLs say where its employees do whatever they do.

filing attorneys and auditor, Walkers and Ernst & Young, respectively, are similarly Cayman Islands entities. The financial books and records of the fund, including the investor register, are currently located in the Cayman Islands.

However, the petition was strikingly silent as to the nature or extent of any business activity Basis Yield conducts (or in the relevant times conducted) in the Cayman Islands. Likewise, it was silent, *inter alia*, as to whether Basis Yield staffed any employees or managers in the Cayman Islands; whether any of its assets were in the Cayman Islands; and the location from which Basis Yield's funds were in fact managed. The failure to address these matters was commented upon in a submission by creditor Citigroup,[9] and in remarks at a hearing by Citigroup's counsel,[10] but in any event was apparent to any observer—including the Court, which did not need a stakeholder's written submission to note the deficiency.[11]

Following the hearing on the JPLs' request for a preliminary injunction blocking the continuation of litigation and seizure of assets,[12] at which scheduling for the future hearing on recognition was also discussed, the Court issued an order with respect to the factual matters raised by the petition, and the matters that had not been addressed in it.[13] The Factual Matters Order provided, *inter alia*, that the Recognition Hearing would be an evidentiary hearing. It further provided that without being foreclosed from introducing any other evidence that the JPLs might consider relevant or helpful to the Court in making the recognition determination, the JPLs were to use best efforts to introduce evidence sufficient for the Court to make

9. *See* Citigroup Response to Debtors' Request for Entry of Preliminary Injunction, dated Sept. 5, 2007 (ECF # 10) at 2. Citigroup continued that without such information, neither creditors nor the Court could make any determination as to whether Basis has its "Center Of Main Interests" ("COMI") in the Cayman Islands (as necessary for recognition as a foreign main proceeding), or whether Basis maintains an establishment there (as necessary for recognition as a foreign nonmain proceeding). *See id.* at 3.

10. *See* Tr. of Hrg. of Sept. 6, 2007, at 13–15.

11. In supplements to their petition, the JPLs added allegations, which this Court likewise takes as true, that since filing their petition, the JPLs sought and obtained recognition from the High Court of Justice as Basis Yield's Joint Provisional Liquidators in England, where a "substantial amount" of Basis Yield's repurchase agreement counterparties are located, though they did not say that the English Court had recognized the Cayman Islands Proceeding as a foreign main proceeding, and, indeed, clarified at oral argument that the English Court proceeding "is not an UNCITRAL type proceeding," and "did not determine COMI." *See* Tr. of Hrg.

of Jan. 15, 2008 at 49. They also added allegations that they had sought and obtained an order in Australia which, while apparently not granting recognition, had granted an application for orders compelling certain parties to turn over, among other things, documents and funds in their possession. By affidavit, they stated that third parties, including creditors, trading counterparties, and/or investors of Basis Yield, had appeared in the proceedings pending in the Cayman Islands and Australia, but that no foreign court or party appearing before a foreign court has challenged the basis for the liquidation proceeding in the Cayman Islands.

12. Relief of this character was uncontroversial, and the Court granted the requested preliminary injunction (which carved out restrictions on rights parties might assert with respect to settlement payments, under repo agreements, and with respect to similar transactions), without prejudice to parties' litigation rights as to other issues in this case.

13. *See* Order re Upcoming Hearing on Motion for Recognition, dated Sept. 12, 2007 (ECF # 16) (the "Factual Matters Order"). A copy follows this Decision as Appendix A.

factual findings with respect to a fair number of specified matters—some or all of which would at least arguably be relevant to a determination as to whether the Cayman Islands were Basis Yield's COMI, or whether Basis Yield maintained an establishment there.

Thereafter, however, the JPLs sought and obtained permission from the Court to file a motion for summary judgment in advance of the recognition hearing. They elected to rely on the limited factual showing they had made, without introducing evidence of the character addressed in the Factual Matters Order. They now argue, in substance, that because Basis Yield's registered office is in the Cayman Islands, the Cayman Islands is presumed to be the COMI, under section 1516 of the Code, discussed below—and that with no objections having been filed, there is no evidence to the contrary. Thus, they argue, this Court *must* recognize the Cayman Islands Proceeding as a foreign main proceeding, as a matter of law.

## Discussion

### I.

### Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [14] The moving party bears the initial burden of showing that the undisputed facts entitle it to judgment as a matter of law. [15]

In determining a summary judgment motion, it is well settled that the court should not weigh the evidence or determine the truth of any matter, and must resolve all ambiguities and draw all reasonable inferences against the moving party. [16] A fact is material if it "might affect the outcome of the suit under the governing law." [17] An issue of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." [18]

### II.

### Chapter 15 of the Code

Chapter 15 of the Bankruptcy Code was enacted in 2005 to implement the Model Law on Cross–Border Insolvency (the "Model Law") formulated by the United Nations Commission on International Trade Law ("UNCITRAL") in a process in which the United States was an active participant. The language of chapter 15 tracks the Model Law, with some modifications that are designed to conform the Model Law with existing United States

14. FED.R.CIV.P. 56(c), made applicable here by FED. R. BANKR.P. 9014 and Case Management Order # 1.

15. *See Rodriguez v. City of New York*, 72 F.3d 1051, 1060–61 (2d Cir.1995); *Ferrostaal, Inc. v. Union Pacific R.R. Co.*, 109 F.Supp.2d 146, 148 (S.D.N.Y.2000) ("The initial burden rests on the moving party to demonstrate the absence of a genuine issue of material fact....").

16. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (holding that summary

judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party"); *Virgin Atlantic Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 262 (2d Cir.2001); *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir.2001) ("We ... constru[e] the evidence in the light most favorable to the non-moving party.").

17. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

18. *Id.*

law.[19] Chapter 15 is fundamentally procedural in nature and does not constitute a change in the basic approach of United States law, which has long been one of honoring principles of comity.[20] Those principles appear, with other purposes of chapter 15, in the first section of that chapter, section 1501. As noted by Judge Drain of this Court:

> Unique to the Bankruptcy Code, [chapter 15] contains a statement of purpose: "[t]he purpose of this chapter is to incorporate the Model Law on Cross–Border Insolvency . . . so as to provide effective mechanisms for dealing with cases of cross-border insolvency," with the express objectives of cooperation between United States courts, trustees, examiners, debtors and debtors in possession and the courts and other competent authorities of foreign countries; greater legal certainty for trade and investment; fair and efficient administration of cross-border insolvencies that protects the interests of all creditors and other interested entities, including the debtor; the protection and maximization of the debtor's assets; and the facilitation of the rescue of financially troubled businesses.[21]

## III.

### Recognition Under Chapter 15

Section 1509 of the Code[22] erects a structure in which the foreign representative passes through the bankruptcy court for a recognition decision, the specified consequences of which are that the foreign representative gains the capacity to sue and be sued in United States courts and the authority to apply directly to a court in the United States for appropriate relief, and that all courts in the United States must grant comity or cooperation to the foreign representative.[23]

19. *In re Iida*, 377 B.R. 243, 256 (9th Cir. BAP 2007). *See also In re Tri–Cont'l Exch. Ltd.*, 349 B.R. 627, 631–32 (Bankr.E.D.Cal.2006) (*"Tri–Continental Exchange"*); H.R.REP. No. 109–31, at 105–07 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 167; Jay Lawrence Westbrook, *Chapter 15 at Last*, 79 AM. BANKR.L.J. 713, 720 (2005) (*"Westbrook I"*) (all cited in *Iida*).

20. *Iida*, 377 B.R. at 256; *Tri–Continental Exchange*, 349 B.R. at 635.

21. *In re SPhinX, Ltd.*, 351 B.R. 103, 112 (Bankr.S.D.N.Y.2006) (Drain, J.) (*"SPhinX–Bankruptcy"*), *aff'd* 371 B.R. 10 (S.D.N.Y. 2007) (Sweet, J.) (*"SPhinX–District"*).

22. Section 1509 provides, in relevant part:
 (a) A foreign representative may commence a case under section 1504 by filing directly with the court a petition for recognition of a foreign proceeding under section 1515.
 (b) If the court grants recognition under section 1517, and subject to any limitations that the court may impose consistent with the policy of this chapter—
 (1) the foreign representative has the capacity to sue and be sued in a court in the United States;
 (2) the foreign representative may apply directly to a court in the United States for appropriate relief in that court; and
 (3) a court in the United States shall grant comity or cooperation to the foreign representative.
 . . .
 (d) If the court denies recognition under this chapter, the court may issue any appropriate order necessary to prevent the foreign representative from obtaining comity or cooperation from courts in the United States.
 . . .
 (f) Notwithstanding any other provision of this section, the failure of a foreign representative to commence a case or to obtain recognition under this chapter does not affect any right the foreign representative may have to sue in a court in the United States to collect or recover a claim which is the property of the debtor.

Congress provided that control of these questions would be concentrated in the bankruptcy court;[24] after a grant of recognition by the bankruptcy court (and subject to any limitations that the bankruptcy court may impose consistent with chapter 15 policy), access, comity and cooperation in other United States courts is mandatory.[25] Conversely, if the bankruptcy court denies recognition, it may issue any appropriate order necessary to prevent the foreign representative from obtaining comity or cooperation from courts in the United States.[26] Thus a decision as to recognition is a serious matter.

Section 1502 of the Code sets forth definitions for use under chapter 15. One of them, section 1502(7), defining "recognition," provides that

> "recognition" means the entry of an order granting recognition of a foreign main proceeding or foreign nonmain proceeding under this chapter. . . .

**23.** *See Iida,* 377 B.R. at 257; *In re Loy,* 380 B.R. 154, 161–62 (Bankr.E.D.Va.2007) (following *Iida*).

**24.** *Iida,* 377 B.R. at 257.

**25.** *See* section 1509(b)(3) (if the bankruptcy court grants recognition under section 1517, and subject to any limitations that the court may impose consistent with chapter 15, "a court in the United States shall grant comity or cooperation to the foreign representative").

In addition, one of the sections of the Code that addresses the effects of a recognition determination, section 1521, provides that after recognition, the foreign representative may petition the bankruptcy court for a host of relief available to a trustee under the United States Bankruptcy Code. *See Loy,* 380 B.R. at 161–62.

**26.** *See* section 1509(d).

**27.** Section 1506 of the Bankruptcy Code provides that "[n]othing in this chapter prevents the court from refusing to take an action

Section 1517 of the Code sets forth the requirements for an order granting recognition, and sets forth a statutory directive that (subject to an exception inapplicable here) when those requirements have been satisfied, a recognition order *shall* be entered. Section 1517 provides, in relevant part:

> (a) Subject to section 1506,[27] after notice and a hearing, an order recognizing a foreign proceeding shall be entered if—
>
> > (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;
> >
> > (2) the foreign representative applying for recognition is a person or body; and
> >
> > (3) the petition meets the requirements of section 1515.
>
> (b) Such foreign proceeding shall be recognized—

governed by this chapter if the action would be manifestly contrary to the public policy of the United States." This provides a safety valve which permits denying recognition in any such instances. But as Judge Drain noted in *SPhinX–Bankruptcy, see* 351 B.R. at 115 n. 15, according to the legislative history, this provision "has been narrowly interpreted on a consistent basis in courts around the world. The word 'manifestly' in international usage restricts the public policy exception to the most fundamental policies of the United States." *See also In re RSM Richter v. Aguilar (In re Ephedra Prods. Liab. Litigation),* 349 B.R. 333 (S.D.N.Y.2006) (Rakoff, J.) (*"Ephedra Products Liability Litigation"*) (recognizing that principle, and declining to find a section 1506 exception with respect to proceedings in Canada for that reason). There has been no suggestion, or indication, that a section 1506 exception should be found to be applicable here. The Court emphasizes that the issues before the Court on this motion have nothing whatever to do with the fairness of Cayman Islands law, or the fairness of the Cayman Islands courts.

(1) as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests; or

(2) as a foreign nonmain proceeding if the debtor has an establishment within the meaning of section 1502 in the foreign country where the proceeding is pending.

Thus, in contrast to the jurisprudence that developed under section 304 that emphasized discretion and flexibility (and that permitted U.S. judicial assistance for a wide array of judicial insolvency proceedings abroad), the new recognition regime under chapter 15 is procedurally quite rigid.[28] To prevail on a petition for recognition, the JPLs must satisfy each of the three requirements of section 1517(a) of the Code.

## IV.

### Application to the Facts Here

Here there is no question that the JPLs have satisfied two of the three requirements of section 1517(a). The JPLs are "persons" within the meaning of section 101(41)[29] and are "foreign representatives" within the meaning of section 101(24),[30] thus complying with the requirements of section 1517(a)(2). Similarly, the JPLs have fulfilled the application prerequisites set forth in section 1515,[31] thereby comporting with the requirements of 1517(a)(3).

The motion then turns on whether the JPLs have complied with the requirements of section 1517(a)(1)—*i.e.*, whether the JPLs have shown that "such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502." And because the JPLs have sought summary judgment granting recognition as a *main* proceeding, the Court has the related questions as to whether, on the evidence now before the Court, they have shown the propriety of such as a matter of law, and without regard to any other facts—and whether the Court has the right to consider all of the facts when the JPLs elected not to put

---

**28.** *See* Jay Lawrence Westbrook, *Locating the Eye of the Financial Storm*, 32 Brooklyn J. Int'l L. 1019, 1024 (2007) ("Westbrook II") ("The Model Law grants great discretion as to specific relief, but imposes a fairly rigid procedural structure for recognition of foreign proceedings."); Daniel Glosband, *SPhinX Chapter 15 Opinion Misses the Mark*, 25 Am. Bankr.Inst. J. 44, 45 (December/January 2007) ("Glosband") ("[F]oreign proceedings are eligible for recognition only if they meet the definitional requirements of either a foreign main proceeding or a nonmain proceeding...."); *Bear Stearns*, 374 B.R. at 126 (quoting Westbrook II and Glosband).

**29.** Section 101(41) provides, in relevant part, "[t]he term 'person' includes individual ..." 11 U.S.C. § 101.

**30.** Section 101(24) provides, in relevant part, "[t]he term 'foreign representative' means a person or body ... authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or

affairs or to act as a representative of such foreign proceeding." *Id.* at § 101. Paragraph 1(e) of the Joint Provisional Liquidator Order issued in the Grand Court of the Cayman Islands on August 28, 2007 clearly designates the petitioners as representatives of the Cayman Proceeding for the purposes of obtaining relief under Chapter 15.

**31.** Section 1515(b) requires that "[a] petition for recognition be accompanied by—(1) a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative; (2) a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or (3) in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative." *Id.* at § 1515(b).

them forth, and instead elected to rely on a statutory presumption embodied in section 1516 of the Code, discussed below.[32]

### A. Requirements of Sections 1517 and 1502 for a "Main Proceeding"

A "foreign main proceeding" is defined, in chapter 15's Definitions section, section 1502(4), as a "foreign proceeding pending in the country where the debtor has the center of its main interests" (referred to in fn. 9 above, and elsewhere, as the "COMI").[33] The Bankruptcy Code does not define COMI, and does not prescribe the type of evidence courts should consider in a COMI analysis.

■ However, prior courts have looked to an array of factors that could be probative in this regard, including: "the location of the debtor's headquarters; the location of those who actually manage the debtor (which conceivably could be the headquarters of a holding company); the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be

affected by the case; and/or the jurisdiction whose law would apply in most disputes."[34] While certainly not exhaustive or all necessarily applicable in this or any other case, these objective factors are indicative of the facts a court might find relevant in a COMI determination.[35]

■ As importantly or more so, as Judge Lifland, one of the authors of the Model Law and chapter 15,[36] observed:

[T]he use of the concept "where the debtor has the centre of its main interests" as the determinant that a foreign proceeding is a "main" proceeding was modeled on the use of that concept in the European Union Convention on Insolvency Proceedings ("EU Convention") that was already in the process of being adopted when UNCITRAL drafted the Model Law.[37]

In the regulation adopting the EU Convention, the COMI concept is elaborated upon as "the place where the debtor conducts the administration of his interests on a regular basis and is therefore ascertainable by third parties."[38]

**32.** In a conference call with the Court, the JPLs sought and obtained permission to file for summary judgment, and to rely on the presumption in lieu of producing the evidence that had been required under the Factual Matters Order. That excuses them from their earlier obligation to comply with the Factual Matters Order. But it does not excuse them from the *consequences* of having failed to provide additional evidence. Since, as the Court now holds, the JPLs here cannot rely on the presumption as a substitute for real evidence, the JPLs will have to comply with the Factual Matters Order when they continue to seek recognition.

**33.** By contrast, a "foreign nonmain proceeding" is defined as any other proceeding "pending in a country where the debtor has an establishment." *Id.* at § 1502(5). And "establishment" is defined as "any place of operations where the debtor carries out a nontransitory economic activity." *Id.* at § 1502(2). Though the JPLs seeks recogni-

tion of the Cayman Islands Proceeding as a nonmain proceeding as an alternative prayer for relief in their petition, they are not seeking recognition of it as a nonmain proceeding under this motion for summary judgment.

**34.** *SphinX–Bankruptcy*, 351 B.R. at 117. *See also Bear Stearns*, 374 B.R. at 128.

**35.** The Court asked for evidence as to these and other matters, see page 42, *supra*, while making it clear that the JPLs would not be limited to evidence of the type the Court requested.

**36.** *See Bear Stearns*, 374 B.R. at 127 n. 3.

**37.** *Id.* at 129.

**38.** *Id.* (quoting Council Reg. (EC) No. 1346/2000, ¶ 13). *See also* Case 341/04, *Bondi v. Bank of America, N.A.* (*In re Eurofood IFSC Ltd.*), 2006 E.C.R. I–3813, p. I8–I9, ¶ 32, 2006 WL 1142304 (E.C.J. May 2, 2006).

This generally equates with the concept of a "principal place of business" in United States law.[39]

In this case, however, and significantly, none of the papers filed by the JPLs to date have addressed, in any meaningful way, any of those factors. The silence is deafening. The JPLs' conspicuous failure to try to establish, or even plead, facts supporting the existence of a main proceeding, even after the Citigroup submission and the Court's own questions in this regard, makes any reasonable observer wonder why. As importantly or more so, the failure of Citigroup ultimately to file an objection does not make the issues Citigroup noted go away—and, as noted, the issues were obvious in any event.

Thus, the Court has questions that need to be answered, unless the JPLs are legally excused from answering them.

### B. Use of Section 1516

As a proxy for the submission of evidence, the JPLs rely on section 1516(c) of the Code. That section provides:

> In the absence of evidence to the contrary, the debtor's registered office, or habitual residence in the case of an individual, is presumed to be the center of the debtor's main interests.

The JPLs argue that in the absence of any objections or facts in the record that could put in question the location of Basis Yield's COMI, they are entitled to this presumption. Therefore, their argument continues, if the other recognition requirements have been met, summary judgment recognizing the Cayman Islands Proceeding—and, indeed, as a foreign main proceeding—*must* be granted.

But the Court cannot endorse that approach, and find that there is a section 1517 qualification as a matter of law, for two separate reasons. Here there is evidence to the contrary. And the Court's power to examine the facts underlying a request for recognition under section 1517, and to inquire under Fed.R.Evid. 614, cannot be sidestepped or eliminated by elections to not plead or introduce the relevant facts.

### 1. Evidence to the Contrary

■ First, the Court here sees enough "evidence to the contrary"—organization of the Debtor under a Cayman Islands statute that raises red flags as to whether that jurisdiction could be the Debtor's COMI—to decline to use a section 1516 presumption as a substitute for actual evidence. Among the few facts that have been put forward here is the fact that Basis Yield was incorporated as an "exempted company" under section 193 of the Cayman Companies Law.[40] Concerns on the part of the Court arise by reason of what section 193, and other sections of the Cayman Companies Law relating to "exempted companies," provide.

Section 193 of the Cayman Companies Law provides:

> An exempted company shall not trade in the Islands with any person, firm or corporation except in furtherance of the business of the exempted company carried on *outside* the Islands:
>
> Provided that nothing in this section shall be construed so as to prevent the exempted company effecting and concluding contracts in the Islands and exercising in the Islands all of its powers

---

**39.** *See In re Tri–Continental Exchange,* 349 B.R. at 633–34; *Bear Stearns,* 374 B.R. at 129.

**40.** *See* Akers Decl. ¶ 2.

necessary for the carrying on of its business *outside* of the Islands.[41]

As significantly or more so, section 184 of the Cayman Companies Law provides:

> A proposed exempted company applying for registration as an exempted company shall submit to the Registrar a declaration signed by a subscriber to the effect *that the operation of the proposed exempted company will be conducted mainly outside the Islands.*[42]

Without more in the way of facts and explanation, there is at least a question in the Court's mind as to whether this exempted company, organized under section 193, and whose representative at least seemingly was required to sign a declaration of the type required under section 184, would have its COMI in the Cayman Islands. If the "operation of the ... exempted company will be conducted mainly outside the Islands," consistent with the representation required to be made under section 184, is it clear, as a matter of law, in the absence of any additional facts, that the exempted company's principal place of business[43] nevertheless is in the Islands?

The Court does not now rule out circumstances under which Basis Yield could engage in activities in the Cayman Islands sufficient to make a COMI showing and still comply with the requirements applicable to exempted companies.[44] But the facts that would support such have not been shown here. While the Court expresses no view on the relevance of section 193 to recognition of a nonmain proceeding (an issue not presented on this motion), it is hardly surprising to this Court that in *Bear Stearns,* on the facts there presented, Judge Lifland considered recognition as a main proceeding of a Cayman Islands insolvency for an "exempted company" organized under section 193 to be inappropriate.[45]

■ As Judge Klein observed in *Tri–Continental Exchange:*

> [I]f the foreign proceeding is in the country of the registered office, and if there is evidence that the center of main interests might be elsewhere, then the foreign representative must prove that

---

**41.** Emphasis added. Although there is also a 2007 Revision to the Cayman Companies Law, it appears that neither section 193 nor sections 184 and 182, discussed below, was amended.

**42.** Emphasis added. To the same effect, though less specific and arguably saying something slightly different, is section 182 of the Cayman Companies Law:

> Any proposed company applying for registration under this Law, *the objects of which are to be carried out mainly outside the Islands,* may apply to be registered as an exempted company.

**43.** Or COMI, to the extent that might be regarded as different.

**44.** Likewise, the Court is not now holding that compliance with section 193 and the related provisions of the Cayman Companies Law precludes, in all cases, a judicial determination that the exempted company's COMI is in the Cayman Islands.

**45.** *See Bear Stearns,* 374 B.R. at 130–31 & n. 13. Similarly, while Judge Drain in *SPhinX–Bankruptcy* ultimately based the denial of main proceeding recognition on the petitioners' improper purpose, he manifestly did not rule that a showing of a Cayman Islands COMI had been made in that case. To the contrary (albeit with a more extensive factual record), he observed that "important objective factors point[ed] to the Sphinx Funds' COMI being located outside the Cayman Islands." 351 B.R. at 119. *See also* Judge Sweet's analysis in *SPhinX–District,* 371 B.R. at 19 ("Based on the facts found, the Bankruptcy Court rightly concluded that objective factors ascertainable to third parties pointed to the SPhinX Funds' COMI not being located within the Cayman Islands, thereby sufficiently rebutting the statutory presumption.").

the center of main interests is in the same country as the registered office.[46]

Thus, unless the Court is bound, by section 1516 of the Code or otherwise, to close its eyes to these issues, the Court needs evidence relevant to the Debtor's COMI, and any main proceeding determination. This is not to say that the JPLs would be unable to make the necessary showing (or the lesser showing required for a nonmain proceeding determination); it is only to say that the Court needs more information.[47]

### 2. Court's Power to Examine

Second, the Court has the power to satisfy itself that the requirements for recognition under section 1517 have been satisfied, and has a right like any other federal court to inquire under Fed.R.Evid. 614. This or any other federal court would have the same power to inquire, if it were so advised, if the JPLs had been even less forthcoming in putting forward relevant facts, and had not stated that Basis Yield is an exempted company under Cayman Islands law. The court's power to ascertain the facts cannot be sidestepped by failures to object. Nor can it be sidestepped by elections not to plead or introduce inconvenient facts.

Textual analysis—where the Court normally starts in any matter of statutory interpretation—is not inconsistent with this conclusion, but is inconclusive. Section 1517 sets forth substantive requirements that must be satisfied. But sections 1517 and 1516 are silent as to whether or not the court's power to ascertain the facts incident to a section 1517 determination is revoked by parties' failures to object—

though section 1517 plainly does *not* say that consent is a substitute for the substantive requirements of that section, or that parties' failures to object deprive the court of the power federal courts customarily exercise when determining whether the requirements of statutes have been satisfied.

Similarly, section 1516(c) would have been clearer (and truer to its stated purpose, see below) if it provided that in the absence of evidence to the contrary, the court "is entitled to presume" that the debtor's registered office is the COMI—rather than providing that the registered office "is presumed" to be the COMI. But neither does section 1516 say that in the absence of objection, the presumption is irrebuttable, or that the court "shall" presume that the registered office is the COMI—which is the normal way of establishing a statutory directive that is binding on a judge. Significantly, each of sections 1517(a), 1517(b), and 1517(c), describing the underlying recognition process, *do* employ the word "shall." And section 1516 does not say, at least expressly, that it trumps the need even to *set forth in a petition* the facts underlying the prima facie case required under section 1517(a).

■ But while textual analysis does not resolve the relevant questions, the legislative history, caselaw, and the published views of commentators—several of whom, like Judge Lifland, were drafters of the Model Law and chapter 15—answer those questions clearly and consistently. All make clear that in making a section 1517 determination, the Court is not bound by parties' failures to object, and that the

---

**46.** 349 B.R. at 635.

**47.** The Court notes that none of *Tri–Continental Exchange, SPhinX–Bankruptcy,* or *Bear Stearns* involved an effort to secure recogni-

tion (as a main or nonmain proceeding) on summary judgment, and that each was decided only after extensive factual presentation and analysis.

section 1516 presumption need not be blindly followed.

### (a) Do Failures to Object Bind the Court?

That failures to object is not conclusive is established by, at the least, legislative history and caselaw. One of the sources that a United States court at least *may* look to, if it is not also *obliged* to treat as persuasive,[48] is the *Guide to Enactment of the UNCITRAL Model Law on Insolvency* (the *"Guide"*),[49] that was promulgated in connection with the approval of the Model Law. As provided in the *Guide*, in its discussion of Article 16 of the Model Law (which sets forth the presumption implemented in the United States in the form of section 1516):

> Article 16 establishes presumptions that allow the court to expedite the evidentiary process; at the same time they do not prevent, in accordance with the applicable procedural law, calling for or assessing other evidence if the conclusion suggested by the presumption is called into question *by the court or* an interested party.[50]

Thus the *Guide* does not require that the presumption be called into question by an interested party. To the contrary, it states, explicitly, that the conclusion suggested by the presumption may likewise be "called into question by the court."

Consistent with that, in *Bear Stearns*, Judge Lifland held that parties' failures to object were not binding upon him in determining that the requirements of section 1517 were satisfied. In connection with the requests for recognition (as main or, alternatively, nonmain, proceedings) in that case, one group of parties filed an ambiguous statement with respect to choice of law issues, and no other party filed a response or objection to the relief requested. Nevertheless, Judge Lifland found that not to be conclusive. After expressly noting the lack of objection, he continued:

> However, recognition under section 1517 is not to be rubber stamped by the courts. This Court must make an independent determination as to whether the foreign proceeding meets the definitional requirements of sections 1502 and 1517 of the Bankruptcy Code.[51]

Further on in *Bear Stearns*, Judge Lifland expanded on that:

> The Petitioners basically argue *that because no objections have been filed* and the Funds' registered offices are in the Cayman Islands, this Court should recognize the Foreign Proceedings as main proceedings. In other words, the Petitioners contend that this Court should accept the proposition that the Foreign Proceedings are main proceedings because the Petitioners say so and *because no one else says they aren't. This contention must be rejected.*[52]

---

48. *See Bear Stearns,* 374 B.R. at 129 (a United States court "may look to" the Guide as persuasive); H.R.REP. No. 109–31(I), at 106 n. 101, *as reprinted in* 2005 U.S.C.C.A.N. 169 n. 101 (the Guide "should be consulted for guidance as to the meaning and purpose of [Chapter 15's] provisions"); *Ephedra Products Liability Litigation,* 349 B.R. at 336 (quoting the House Report, and noting that the House Judiciary Committee, in enacting Chapter 15, specifically indicated that the *Guide* should be consulted); *Tri–Continental Exchange,* 349 B.R. at 633 (the *Guide* is one of the sources

that a United States Court is "obliged" to take as persuasive).

49. U.N. Gen. Ass., UNCITRAL 30th Sess., U.N. Doc. A/CN.9/442 (1997).

50. *Guide* ¶ 122 (emphasis added).

51. 374 B.R. at 126.

52. *Id.* at 129 (footnote omitted; emphasis added).

Though Judge Lifland noted that there was dicta in *SPhinX–Bankruptcy*—relied upon the JPLs here[53]—suggesting that if the parties in interest had not objected to the Cayman Islands proceeding being recognized as main, recognition would have been granted, Judge Lifland disagreed with it: "[t]o the extent that non objection would make the recognition process a rubber stamp exercise, this Court disagrees with the dicta in the *SPhinX* decision."[54]

■ Finally, commentators—including members, along with Judge Lifland, of the Model Act and chapter 15 drafting groups—have (so far as this Court can tell, uniformly) endorsed Judge Lifland's analysis, and/or agreed with the view, expressed by the *Guide* and Judge Lifland, that the court always has the power to make its own determination on qualification under section 1517, notwithstanding the presence of section 1516 and the absence of an actual objection.[55]

■ Moreover, the procedural posture in the instant case is relevant to the determination of whether a lack of objections binds the Court. A court may properly deny a motion for summary judgment, even where no opposing evidentiary matters are presented, when the movant bears the burden of proof at trial and fails to establish the absence of genuine issues of fact.[56] As discussed in more detail below, both caselaw and legislative history confirm that the burden of proof as to each element of a petition for recognition is on the foreign representative.[57] The absence of objections to recognition here neither obviates the JPLs' evidentiary burden nor prevents the Court from concluding on the current record that genuine issues of material fact exist so as to prevent determination as a matter of law.

### (b) Is the Court Bound by the Section 1516 Presumption?

■ Finally, the Court determines that the section 1516 presumption exists for the purposes of speed and convenience, and to save stakeholders costs in straightforward cases, but does not tie the hands of a court to examine the facts more closely in any instances where the court regards the issues to be sufficiently material to warrant further inquiry.

■ Judge Lifland expressly so held in *Bear Stearns*.[58] And Judges Drain and Sweet noted the speed and convenience purpose in *SPhinX–Bankruptcy* and *SPhinX–District*. As Judge Sweet stated

**53.** *See* JPLs Br. at 7, 10.

**54.** 374 B.R. at 130. With the benefit of the extensive discussion of this topic that has followed the earliest analysis of it a year and a half ago, this Court concurs with Judge Lifland's analysis, for the reasons stated above and below.

**55.** *See* Glosband, *supra* note 28, at 84; Westbrook II, *supra* note 28, at 1033–34; Kathy Yeatter, *Judicial Vagaries and Their Potential Impact on the Valuation of Distressed Debt*, 26 AM. BANKR.INST. J. 50, 52, 53 (Nov.2007).

**56.** *See, e.g., Resolution Trust Corp. v. Gill*, 960 F.2d 336, 340 (3rd Cir.1992) ("However, where the movant bears the burden of proof at trial and the motion does not establish the absence of a genuine factual issue, the ...

court should deny summary judgment even if no opposing evidentiary matter is presented.").

**57.** *See Tri–Continental Exchange*, 349 B.R. at 635.

**58.** *See* 374 B.R. at 129 (noting the *Eurofood* observation that the presumption may be overcome "particular[ly] in the case of a 'letterbox' company not carrying out any business" in the territory of its registered office, and the provisions of the *Guide*, expressly noting that the presumption does not prevent calling for evidence if the conclusion suggested by the presumption is called into question by the court).

in *SPhinX–District,* quoting Judge Drain's *SPhinX–Bankruptcy* observations approvingly:

> As recognized by the Bankruptcy Court: "The legislative history [ ] indicates that the statutory presumption of § 1516(c) may be of less weight in the event of a serious dispute: '[t]he presumption that the place of the registered office is also the center of the debtor's main interest is included for speed and convenience of proof where there is no serious controversy.' " [59]

As previously noted, the Guide explains that the Model Act's presumption, embodied in the U.S. Bankruptcy Code's section 1516, does "not prevent, in accordance with applicable procedural law, *calling for* or assessing other evidence if the conclusion suggested by the presumption is called into question *by the court* or an interested party." [60] The court's ability to "call[ ] for" other evidence is expressly noted in the *Guide.* And as noted by the European Court of Justice, the COMI presumption may be overcome "particular[ly] in the case of a 'letterbox' company not carrying out any business in the territory of the Member State in which its registered office is situated." [61]

▆▆▆▆ A presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast. [62] Section 1516(c) merely creates a rebuttable presumption and does not shift the burden of proof in supporting a petition for recognition. [63] As Judge Klein noted in *Tri–Continental Exchange,* the word "proof" in subsection (3) was changed to "evidence" to make it clearer using United States terminology that the ultimate burden is on the foreign representative. [64]

▆▆▆▆ As Judge Klein also noted in *Tri–Continental Exchange,* the House Report for the chapter 15 amendments provided:

> Although sections 1515 and 1516 are designed to make recognition as simple and expedient as possible, the court *may hear proof on any element stated.* The ultimate burden as to each element is on the foreign representative, although the court is *entitled to* shift the burden to the extent indicated in section 1516. [65]

Thus the court is "entitled to" shift the burden to the extent indicated in section 1516, but does not need to, if it is uncomfortable that a prima facie case has been shown.

Finally, the Court's right to call for other evidence is confirmed not just by the *Guide,* but also by the Federal Rules of

---

**59.** *SPhinX–District,* 371 B.R. at 18 (quoting *SPhinX–Bankruptcy,* 351 B.R. at 117, which in turn had quoted the House Report, H.R.REP. No. 109–31, pt. 1, at 112–13 (2005), U.S.Code Cong. & Admin.News 2005, pp. 88, 175).

**60.** Emphasis added.

**61.** *See Eurofood, supra* note 38, at ¶¶ 34, 35; *see also SPhinX–District,* 371 B.R. at 19 (same, citing *Eurofood*).

**62.** FED.R.EVID. 301.

**63.** *See Tri–Continental Exchange,* 349 B.R. at 635 ("The registered office, however, does not otherwise have special evidentiary value and does not shift the risk of nonpersuasion, i.e. the burden of proof, away from the foreign representative seeking recognition as a main proceeding.").

**64.** 349 B.R. at 635 n. 8.

**65.** *Id.* (quoting H.R.REP. No. 109–31, at 112–13, *as reprinted in* 2005 U.S.C.C.A.N. 88, 175) (emphasis added).

Evidence. Rule 614 provides, in relevant part:

> (a) Calling by court. The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called.

> (b) Interrogation by court. The court may interrogate witnesses, whether called by itself or by a party.

Subsection (a) of Rule 614 is particularly relevant. Just as the *Guide* says that the presumption does not prevent "calling for or assessing other evidence if the conclusion suggested by the presumption is called into question by the court," Rule 614(a) gives the court the right, on its own motion, to *call* witnesses. Granting summary judgment here would deny the Court that right. As the Committee Notes with respect to Rule 614(a) provide, "the authority of the judge to call witnesses is well established." The court's right to call witnesses, on its own motion, ensures that "the judge is not imprisoned within the case as made by the parties." [66]

The showing here can be compared and contrasted to the showings that have been made in all of the other chapter 15 cases that have come up on this Court's watch— in all of which the Court granted the requested recognition, or would in the absence of objection. [67] As a prototypical example of the kind of petition that would be satisfactory in the absence of an objection, the petition for *ING Re* states that the company, a reinsurance company, "is headquartered in London, England"; "its assets are primarily located in England"; "[t]he Company began writing business in the London Market in July 1997"; and "[t]he reinsurance contracts that will be affected by the Scheme of Arrangement were written predominantly from the Company's headquarters in London." [68] Simple allegations of this type would normally be more than sufficient to give a court comfort that reliance on the section 1516 presumption is appropriate, in the absence of an objection and/or any other evidence to the contrary. Of course, in light of the allegations that have been typical in the other section 1517 petitions that

66. FED.R.EVID. 614 Committee Notes for 1972 Proposed Rules.

67. *See In re Daewoo Corp.*, 06–12242(REG) (Korean insolvency proceeding for the flagship company of the Daewoo Group, one of the largest industrial conglomerates in Korea, recognized as foreign main proceeding); *In re AXA Insurance UK PLC*, 07–07–12110(REG); *Eccleasiastical Insurance Office PLC*, 07–12111(REG); *Global General and Reinsurance Co. Ltd.*, 07–12112(REG); *MMA IARDD Assurance Mutuelles*, 07–12113(REG) (in jointly administered case, English insolvency proceeding for three UK and one non-UK company, all writing reinsurance business in the London market, recognized as main proceeding for the UK companies, and nonmain proceeding for the non-UK company, where alleged, with respect to the UK companies, that "their principal place of business is the UK," and alleged, for the nonmain proceeding rec-

ognition for the non-UK company, that it transacted insurance business in England and maintained an establishment there); *In re Europaische Ruckversicheruns–Gesellschaft in Zurich (European Reinsurance Co. of Zurich)*, 06–13061(REG) (English insolvency proceeding for Swiss reinsurance company doing business in the London market recognized as nonmain proceeding). In one other chapter 15 case before this Court, *In re ING Re (UK) Ltd.*, 08–10018(REG) ("*ING Re*"), a recently filed case with a petition stating that the debtor is headquartered in London and has written insurance in the London market, the matter of recognition is pending. Parties have not yet been heard on whether there is any dispute as to those allegations, or as to whether there are any facts suggesting that its English insolvency proceeding should not be regarded as a main proceeding.

68. *See ING Re* Petition at ¶¶ 5, 6, 10.

this Court has seen, the omissions in this case were particularly striking.

Thus, while recognition *may* be granted under a section 1516 presumption (and often that will be appropriate and in the joint interests of parties and the court), the Court cannot agree that it *must* be granted. The JPLs inappropriately transform a labor saving presumption in instances where the basis for recognition is apparent to one that would tie the hands of a court to inquire into the actual facts, in cases where the circumstances require more scrutiny—making recognition turn not on compliance with the requirements of section 1517, but on the happenstance of whether parties might or might not object. Such a result would be exactly *inconsistent* with one of chapter 15's expressly stated purposes, providing predictability to the financial community.[69]

### Conclusion

This Court shares the attitude of hospitality and willingness to grant comity that underlies the great bulk of section 304 and chapter 15 jurisprudence, and feels no differently with recognition requests under section 1517. And plainly section 1516 provides for a time and labor saving process that is useful. In most cases, the fact that a jurisdiction is a debtor's COMI (or a place where it has an establishment) will be obvious, or will appear from facts set forth in the petition or an accompanying affidavit—especially if members of the bar wishing to invoke section 1516 simply include basic statements, in the petition or an affidavit, of the type that other petitioners have provided to this Court. When facts showing a COMI are already known or have been put forth, and there is no opposition, the Court would hardly suggest that further evidence with respect to rec-

ognition would be necessary; it would be in exactly such a circumstance that the section 1516 presumption would be very useful, and would rarely, if ever, be second-guessed. In fact, the Court would be saddened if the pendulum swung too far the other way, depriving parties of the use of the section 1516 presumption when allegations in their petitions or statements in their affidavits foreclose any real controversy.

But the decision necessarily must remain with the court, which may be satisfied with reliance on the presumption or not, consistent with its ultimate responsibility, and power, to determine that the requirements of sections 1502 and 1517 are satisfied.

 In this case, genuine issues of material fact exist as to the location of Basis Yield's COMI. While the Court does not in any way rule out the possibility that facts could be adduced at an evidentiary hearing sufficient to make a case for entitlement to recognition, the JPLs are not now entitled to recognition as a matter of law.

Summary judgment is denied. Consistent with the requirements of section 1517(c), the Court will hold the evidentiary hearing on the matter of recognition at the earliest practical time. The JPLs' evidentiary presentations shall be made in accordance with Case Management Order #1, subject to an adjustment of time with respect to the submission of direct testimony affidavits; they will be submitted early enough to permit the Court to advise the JPLs of any desire to call witnesses whose testimony has not already been set forth by affidavit. Duties under the Factual Matters Order are now reinstated.

SO ORDERED.

---

**69.** *See* Bankruptcy Code section 1501 (including, as one of chapter 15's objectives, "greater legal certainty for trade and investment");

Westbrook II, *supra* note 28, at 1019 (noting the importance of predictability in making COMI determinations).

## APPENDIX A

### ORDER RE UPCOMING HEARING ON MOTION FOR RECOGNITION

Confirming and amplifying upon matters addressed at the conference in this case on September 6, 2007, and for the purpose of developing a factual record that may be necessary or helpful in determining the issues on the JPLs' motion for recognition,

It is ORDERED:

1. The hearing on the JPLs' motion for recognition will be an evidentiary hearing. The procedures set forth in Case Management Order # 1, dated Sept. 5, 2007 (ECF # 7) (as applicable generally and as to Contested Matters) will apply, except as any may hereafter be modified by any further order of the Court.

2. Without being foreclosed from introducing any other evidence that they might consider relevant or helpful to the Court in making the recognition determination (and without prejudice to the rights of the JPLs or any other parties to submit any evidence relevant to the recognition determination), the JPLs shall use best efforts to introduce evidence sufficient for the Court to make factual findings with respect to at least the following matters:

(a) in what jurisdiction or jurisdictions Basis Yield Alpha Fund (Master) ("Basis Yield") is organized and/or registered, and as what kind of business entity (*e.g.*, corporation, limited liability company, general or limited partnership, business trust, etc.);

(b) to what extent Basis Yield is registered or qualified to do business in any jurisdictions other than the jurisdiction in which it was organized (*e.g.*, as a foreign corporation);

(c) where Basis Yield maintains offices, and what functions are performed at each such office;

(d) the number, locations, and functions of any personnel employed by Basis Yield;

(e) the number, locations, and functions of any personnel who are not employed by Basis Yield but who nevertheless perform services on its behalf;

(f) the extent to which other business entities (such as an investment advisor) exercise managerial control over Basis Yield operations, and if so, where any such entities are headquartered and conduct their business;

(g) the place or places at which investment or portfolio management for Basis Yield is conducted, and the number, locations and functions of persons who are responsible for Basis Yield investment or portfolio management;

(h) the place or places at which any Basis Yield administrative or back-office operations are conducted, and the number, locations and functions of persons who are responsible for any such operations;

(i) the place or places at which assets of the Basis Yield estate are located, and the approximate value of the assets at each locale;

(j) the extent, if any, to which real property is leased or owned by Basis Yield, and, if so, its location;

(k) the extent, if any, to which assets were transferred to or from the Cayman Islands before or after the initiation of the liquidation proceedings in the Grand Court of the Cayman Islands (the "Cayman Islands Proceeding"), and, if applicable, the circumstances surrounding any such transfers;

(*l*) the identity and location of the members of the Basis Yield governing body before the appointment of the JPLs, and the place or places at which the Basis Yield governing body met per-

sonally within the last several years-or, to the extent meetings were in whole or in part conducted telephonically, the place or places from which the members of the governing body called in;

(m) the number and location of Basis Yield creditors;

(n) the number and location of equity investors in Basis Yield (or, if more applicable, in the Basis Yield feeder funds) and the relative percentages of the applicable equity that investors in each locale hold;

(o) the extent to which Basis Yield had or now has contractual agreements with entities that are (i) organized under the laws of the Cayman Islands; (ii) have offices in the Cayman Islands; or (iii) employ residents of the Cayman Islands;

(p) the locale or locales at which Basis Yield maintains its financial records and, if applicable, equity investor registries, and, if different, where they were maintained before the commencement of the Cayman Islands Proceeding;

(q) the extent, if any, to which Basis Yield is required to keep books or records in the Cayman Islands; the extent to which Basis Yield does so; and the extent to which books or records not required to be kept in the Cayman Islands are nevertheless maintained there;

(r) the locale or locales of obligors with respect to any Basis Yield receivables;

(s) The extent to which Basis Yield is a party to any contractual agreements that set forth the law to be applied in the event of any disputes thereunder;

(t) the nature and extent of nontransitory economic activity carried out by Basis Yield in the Cayman Islands; and

(u) the extent, if any, to which Basis Yield is subject to the prohibitions of Companies Law (2004 Revision) of the Cayman Islands Section 193, and, if applicable, the extent to which Basis Yield's activities, or the locale thereof, are affected by the provisions of Section 193.

3. The JPLs shall submit evidence with respect to these matters whether or not any party in interest ultimately objects.

4. There is no significance to the order in which matters to be addressed have been listed. Nothing in this Order is or shall be deemed to be an expression of views on the merits of the underlying motion; on the relevance, if any, of any of the above matters; or the weight to be afforded to any facts (responding to the above or otherwise) in connection with the motion.