# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**
May 27, 2010

No. 09-20288

Lyle W. Cayce
Clerk

In the Matter of:  YUVAL RAN,

Debtor

---

ZURIEL LAVIE,

Appellant

v.

YUVAL RAN,

Appellee

---

Appeal from the United States District Court
for the Southern District of Texas

---

Before STEWART, DENNIS, and HAYNES, Circuit Judges.

CARL E. STEWART, Circuit Judge:

In a matter of first impression before this court, Zuriel Lavie ("Lavie"), an Israeli bankruptcy receiver, appeals the district court's denial of his petition for recognition under Chapter 15 of the Bankruptcy Code of an ongoing, involuntary bankruptcy proceeding pending in Israel, for debtor Yuval Ran ("Ran").  In particular, the petition sought recognition of the Israeli bankruptcy proceeding

No. 09-20288

as a foreign main or nonmain proceeding. If granted, that recognition would have entitled Lavie to the protections of a variety of Bankruptcy Code provisions. For the reasons discussed below, we affirm the district court's denial of Lavie's petition for recognition under Chapter 15 of the Bankruptcy Code.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ran was a well-known Israeli businessman and promoter when he encountered financial difficulties in the late 1990's. In fact, he was a director or shareholder in almost one hundred Israeli companies, some of them publicly-traded. The largest company in which Ran had a controlling interest was Israel Credit Lines Supplementary Financial Services Ltd. ("Credit Lines"), a public company that was co-founded by Ran and for which he served as CEO. Credit Lines raised millions of dollars from investors and owned interests in numerous other companies. It is now in liquidation through an Israeli bankruptcy proceeding, and its receiver has asserted claims against Ran for millions of dollars in damages. On June 16, 1997, an involuntary bankruptcy proceeding was commenced against Ran, in the Israeli District Court of Tel Aviv-Jaffa. Lavie was initially appointed as temporary receiver of Ran's assets and later, on November 28, 1998, Lavie was appointed permanent receiver.

In April 1997, before the involuntary bankruptcy proceeding was commenced, Ran left Israel and has never returned. After leaving, Ran moved to Houston, Texas, in May or June of 1997, where he and his family have since resided continuously. Ran's wife and five children are United States citizens, and Ran is a legal permanent resident of the United States and is currently seeking United States citizenship. Ran and his wife own a home in Houston and are both employees of a furniture company in the area. After leaving Israel, Ran temporarily assisted in collecting debts owed to Credit Lines, but ceased doing so when receivership and liquidation proceedings began for Credit Lines in 1998.

Currently, Ran carries out no business activity in Israel, and has not done so since 1998.

On December 11, 2006, nearly a decade after Ran and his family emigrated from Israel and more than eight years after being appointed receiver of Ran's estate, Lavie filed a petition seeking recognition of the Israeli bankruptcy proceeding as a foreign main or nonmain proceeding under Chapter 15 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of Texas. On May 22, 2007, the Bankruptcy Court denied the petition. The Bankruptcy Court's order was the subject of two appeals to the district court, the first resulting in a remand for additional findings and the second resulting in an order affirming the denial of Lavie's petition for recognition. This appeal followed.

## II. DISCUSSION

### A.    Standard of Review

"We review a district court's affirmance of a bankruptcy court decision by applying the same standard of review to the bankruptcy court decision that the district court applied." *In re Martinez*, 564 F.3d 719, 725-26 (5th Cir. 2009). "We thus generally review factual findings for clear error and conclusions of law de novo." *Id.* at 726 (quoting *In re OCA, Inc.*, 551 F.3d 359, 366 (5th Cir. 2008)) (internal quotation marks omitted). While a determination of whether Ran's bankruptcy proceeding is a foreign main or nonmain proceeding is inherently a fact-driven inquiry, the facts in this case are not in dispute and the appeal to the district court was de novo, as is the appeal to this court. *See, e.g., In re Belsome*, 434 F.3d 774, 776 (5th Cir. 2005); *see also*, William H. Schrag, William C. Heuer, & Robert E. Cortes, *Cross-Border Insolvencies and Chapter 15: Recent U.S. Case Law Determining Whether a Foreign Proceeding Is "Main" or"Nonmain" or Neither*, 17 J. BANKR. L. & PRAC. 5, art. 4 (Aug. 2008) (noting that "[t]he

determination of whether a foreign proceeding is 'main' or 'nonmain' is fact-driven").

## B.    Chapter 15's Framework

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") enacted Chapter 15 of the Bankruptcy Code, "so as to provide effective mechanisms for dealing with cases of cross-border insolvency." 11 U.S.C. § 1501(a).  It replaced former Section 304 of the Bankruptcy Code and "incorporate[s] the Model Law on Cross-Border Insolvency" drafted by UNCITRAL, the United Nations Commission on International Trade Law, which in turn, is based upon the European Union Convention on Insolvency Proceedings (the "EU Convention"). *See* 11 U.S.C. § 1501(a) *et seq*.; *see also In re Tri-Continental Exch. Ltd.*, 349 B.R. 627, 633-34 (Bankr. E.D. Cal. 2006). The statutory intent to conform American law with international law is explicit in the text of Section 1501(a), and also is expressed in Section 1508, which states that "[i]n interpreting this chapter, the court shall consider its international origin, and the need to promote an application of this chapter that is consistent with the application of similar statutes adopted by foreign jurisdictions." 11 U.S.C. § 1508; *see also* House Report on the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, H.R. Rep. No. 109-31, pt. I, at 105 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 169 ("[Chapter 15] incorporates the Model Law on Cross-Border Insolvency to encourage cooperation between the United States and foreign countries with respect to transnational insolvency cases . . . . [hereinafter "House Report"]; 8 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY § 1501.01 (15th ed. rev. 2008) (explaining the basis for Chapter 15).

A non-exhaustive list of relief available to a foreign proceeding's representative in a Chapter 15 case includes: (1) an automatic stay of actions against the debtor under Bankruptcy Code Section 362; (2) the ability to operate

the debtor's business; (3) examination of witnesses; and (4) the entrusting of the administration of the debtor's United States assets to the foreign representative. *See generally* 11 U.S.C. § 1520(a)(1)-(3); *see also id.* § 1519(a)(1)-(3).  In order for a foreign proceeding to gain recognition within the framework of Chapter 15, the following prerequisites must be met:

> (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;
>
> (2) the foreign representative applying for recognition is a person or body; and
>
> (3) the petition meets the requirements of section 1515.

11 U.S.C. § 1517(a); *see also In re Betcorp Ltd,*, 400 B.R. 266, 285 (Bankr. D. Nev. 2009).

This statutory mandate is subject to a narrow public policy exception which permits a court to refuse recognition "if the action would be manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506. But, the exception is intended to be invoked only under exceptional circumstances concerning matters of fundamental importance for the United States. *See In re Iida,* 377 B.R. 243 (9th Cir. BAP 2007)*; In re Atlas Shipping A/S,* 404 B.R. 726 (Bankr. S.D.N.Y. 2009); *In re Ernst & Young, Inc.,* 383 B.R. 773, 781 (Bankr. D. Colo. 2008).  Nevertheless, recognition under Section 1517 of the Bankruptcy Code is not a "rubber stamp exercise." *In re Basis Yield Alpha Fund (Master)*, 381 B.R. 37, 40 (Bankr. S.D.N.Y. 2008). Even in the absence of an objection, courts must undertake their own jurisdictional analysis and grant or deny recognition under Chapter 15 as the facts of each case warrant.  *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 335  (S.D.N.Y. 2008).  The ultimate burden of proof on the requirements of recognition is on the foreign representative. *See id.* at 334.

No. 09-20288

Although listed as the third element, the first requirement for recognition under Section 1517 is purely procedural in nature; that is, the petition must meet the pleading requirements of Section 1515. *See* 11 U.S.C. § 1517(a)(3). Section 1515 establishes several pleading requirements. First, it requires that the foreign representative has filed a petition for recognition. *Id.* § 1515(a). Second, Section 1515 requires the petitioner to establish that a foreign proceeding exists, and that the petitioner has been appointed as the foreign representative. *Id.* § 1515(b). The first two paragraphs of this subsection provide for what constitutes sufficient evidence, and specify that the petitioner may satisfy this requirement by providing a "certified copy of the decision commencing such foreign proceeding and appointing the foreign representative" and "a certificate from the foreign court affirming the existence of the foreign proceeding and the appointment of the foreign representative." *Id.*    Third, Section 1515 requires that the petition for recognition must be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative. *Id.* § 1515(c). Lavie has satisfied all of these procedural requirements.  Thus, Section 1517(a)(3) has been satisfied. Lavie has also met the requirements of the second element of Section 1517(a) because "the foreign representative applying for recognition is a person or body[.]" *Id.* § 1517(a)(2).

Because the second and third requirements set forth in Section 1517(a) are indisputably met, the only substantive issue before the court becomes the first delineated requirement of Section 1517(a)(1)—whether the foreign proceeding for which recognition is sought, here Ran's ongoing, involuntary bankruptcy proceeding pending in Israeli, is a foreign main or nonmain proceeding.  If the foreign proceeding is neither then it is simply ineligible for recognition under Chapter 15. *See In re Bear Stearns*, 389 B.R. at 334; *see also*

*In re SPhinX, Ltd.*, 351 B.R. 103, 120 n.22 (Bankr. S.D.N.Y. 2006), *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007).

## C.    Determining Status as a Foreign Main Proceeding

A foreign main proceeding is "a foreign proceeding pending in the country where the debtor has the *center of its main interest.*" 11 U.S.C. § 1502(4) (emphasis added). The phrase "center of main interest" ("COMI") is a term of art, which the Bankruptcy Code does not define explicitly. Chapter 15, however, does provide that "[i]n the absence of evidence to the contrary, the debtor's registered office, or habitual residence in the case of an individual, is presumed to be the center of the debtor's main interests." *Id.* § 1516(c). This presumption can be rebutted by evidence to the contrary. *See In re Tri-Continental Exch. Ltd.*, 349 B.R. at 634. Thus, to determine where Ran's presumptive COMI lies, we must determine the location of his habitual residence and then determine if any evidence to the contrary was presented by Lavie to rebut the presumption that Ran's habitual residence is his COMI. If so, our inquiry does not end and we must consider all evidence to determine the location of Ran's COMI.

The Code does not define "habitual residence," but it has been analyzed recently by foreign courts as virtually identical to the more commonly used, at least in the United States, concept of domicile. Under our law, domicile is established by physical presence in a location coupled with an intent to remain there indefinitely. *Texas v. Florida*, 306 U.S. 398 (1939). One acquires a "domicile of origin" at birth, and that domicile continues until a new one (a "domicile of choice") is acquired. *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30 (1989). To defeat the presumption of continuing domicile and establish a new domicile, an individual must demonstrate residence in a new state and an intention to remain in that state indefinitely. *Acridge v. Evangelical Lutheran Good Samaritan Soc'y*, 334 F.3d 444, 448 (5th Cir. 2003).

Similarly, according to foreign courts, the existence of a habitual residence

7

largely depends on whether the debtor intends to stay in the location permanently. *See, e.g.*, *Pinna v. Caisse d' Allocations Familiales de la Savoie*, [1986] E.C.R. 1 (ECJ 1986) (France).  Other factors pertinent to a finding of an individual's habitual residence include: (1) the length of time spent in the location; (2) the occupational or familial ties to the area; and (3) the location of the individual's regular activities, jobs, assets,  investments, clubs, unions, and institutions of which he is a member. *See, e.g.*, *id.*; *see also* George A. Rosenberg, *Israeli Tax Reform*, J. INT'L TAX'N 31, 2003 WL 1871011 at *31 (April 2003); *Geveran Trading Co. v. Skjevesland*, 2002 WL 31947334 (Ch. D.  Bankruptcy Ct.) (Eng.);  Israel Doran & Tal Golan, *Aging, Globalization, and the Legal Construction of "Residence:"  The Case of Old Age Pensions in Israel*, 15 ELDER L.J. 1, 16 (2007).

Here, it is evident that when Lavie filed the petition for recognition, Ran's habitual residence was in Houston, Texas.  Our conclusion is supported by our review of the record which reveals that Ran left Israel nearly a decade prior to the filing of the petition, has no intent to return, and has established employment and a permanent residence in Houston.  Ran is a legal permanent resident of the United States and his children are United States citizens.  And the record also reflects that Ran maintains his finances exclusively in Texas.  The totality of the circumstances before us indicates that the United States is Ran's habitual residence and thus his presumptive COMI.

Before the district court, Lavie introduced evidence to rebut the presumption that Ran's COMI is located in the United States.  Because of this, we cannot rely solely upon Section 1516(c)'s presumption. Instead, in order to determine Ran's COMI we must consider all evidence, while keeping in mind that it is Lavie's burden to persuade the court by a preponderance of the evidence that Ran's COMI is in Israel. *See In re Bear Stearns*, 389 B.R. at 335-36; *see also* FED. R. EVID. 301 (explaining that a party's rebuttal of a

presumption does not shift the burden of proof; rather, the risk of nonpersuasion remains upon the party on whom it was originally cast—in this case, Ran); *In re Tri-Continental Exch. Ltd.*, 349 B.R. at 635 (discussing the 11 U.S.C. § 1516(c) presumption); *Schaflein v. Comm'n of the European Cmtys.*, (Case 284/87) [1988] ECR 4475 (ECJ 2d Chamber 1988) (noting that although an individual's habitual residence is presumed to be his COMI, this presumption is not outcome determinative if other evidence suggests the debtor's COMI is elsewhere); *see also* Guide to Enactment of the UNCITRAL Model Law on Cross-Border Insolvency § 122 (noting that the presumption does "not prevent, in accordance with applicable procedural law, calling for or assessing other evidence if the conclusion suggested by the presumption is called into question by the court or an interested party").

Neither Chapter 15 nor the Model Law on Cross-Border Insolvency describes the factors that may be relevant to a determination of the debtor's COMI in a case where it is disputed. But, the *SPhinX* court suggested the following list of non-exhaustive factors to be considered when a debtor's COMI is in dispute:

> Various factors, singly or combined, could be relevant to such a determination: the location of the debtor's headquarters; the location of those who actually manage the debtor (which, conceivably could be the headquarters of a holding company); the location of the debtor's primary assets; the location of the majority of the debtor's creditors or a majority of the creditors who would be affected the case; and/or the jurisdiction whose law would apply to most disputes.

351 B.R. at 117, *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007). In *SPhinX* the court was concerned with the COMI of a debtor corporation. It noted that in the absence

of evidence to the contrary, the COMI of a corporation is presumed to be the place of its registered office which it equated with the corporation's principal place of business. *Id.* at 116. Considering the above listed factors, the court then determined that the statutory presumption regarding COMI had been overcome and that the debtor corporation's COMI was not the place of its registered office. *Id.*

While the factors set forth in *SPhinX* offer a useful analytical framework to determine the disputed COMI of a corporate debtor, the relevant factors to determine the disputed COMI in the case of an individual debtor who has no registered office, headquarters, or holding company may be somewhat different. Nevertheless, in *In re Loy*, 380 B.R. 154. 162 (Bankr. E.D. Va. 2007), the only case to address the concept of COMI with respect to an individual debtor, the court noted that factors such as (1) the location of a debtor's primary assets; (2) the location of the majority of the debtor's creditors; and (3) the jurisdiction whose law would apply to most disputes, may be used to determine an individual debtor's COMI when there exists a serious dispute. In other words, the *Loy* court considered factors which are normally applied to the determination of a corporate debtor's COMI in order to determine the disputed COMI of an individual debtor. After weighing the evidence before it concerning each factor, the bankruptcy court concluded that Loy's COMI was England. *Id.*

The applicability *vel non* of the *SPhinX* factors to the determination of the disputed COMI of an individual debtor is an argument that we need not address today. Even assuming *arguendo* their applicability to the instant case our review of the record reveals that Lavie's evidence, while sufficient to rebut the presumption that Ran's COMI was in the United States, was nevertheless insufficient to prove by a preponderance of the evidence that Israel is the location of Ran's center of main interests.

No. 09-20288

Lavie proffered the following evidence before the district court to establish that Ran's center of main interests lies in Israel: (1) Ran's creditors are located in Israel; (2) Ran's principal assets are being administered in bankruptcy pending in Israel; and (3) Ran's bankruptcy proceedings initiated in Israel and would be governed by Israeli law. These factors, however, when weighed against the following: (1) Ran along with his family left Israel nearly a decade prior to the filing of the petition; (2) Ran has no intent to return to Israel; (3) Ran has established employment and a residence in Houston, Texas; (4) Ran is a permanent legal resident of the United States and his children are United States citizens; and (5) Ran maintains his finances exclusively in Texas, are insufficient to prove by a preponderance of the evidence that Israel is Ran's COMI. *See Pennzoil Co. v. F.E.R.C.*, 789 F.2d 1128, 1136 (5th Cir. 1986) (noting that a fact finder can still credit the evidence of the party in favor of whom the rebutted presumption operates despite the existence of contrary evidence and despite the resultant destruction of the presumption).

Lavie's reliance upon *Loy* to provide support for his argument that Lavie's COMI is Israel is misplaced because it is plainly distinguishable for a number of reasons. First, in *Loy* the court concluded that the debtor's habitual residence was the United Kingdom. *Loy*, 380 B.R. at 163. Thus, the presumption identified in Section 1516(c) weighed in favor of the court finding that the United Kingdom was Loy's COMI. *Id*. In contrast, in the instant case, before being rebutted, the Section 1516(c) presumption weighed in favor of Ran's COMI being in the United States, the location of his habitual residence. Second, unlike in the instant case, the debtor in *Loy* was involved in the bankruptcy proceedings in the United Kingdom prior to his departure for the United States. Unlike Ran, Loy never successfully transferred his COMI before the petition for recognition was filed.

11

No.  09-20288

Although our review of the objective factors establishes that Ran's COMI is in the United States, Lavie has another argument.  He contends that the COMI determination should be made with reference to Ran's operational history, and not merely by focusing upon where Ran's COMI lies on the date the petition for recognition was filed.  In other words, Lavie argues that because Ran's COMI was located in Israel at some point in time before he filed the petition for recognition, we should lookback at Ran's operational history in Israel to conclude that his COMI lies in Israel.  We disagree.

An analysis of the proper COMI timeframe starts with, as it must, the text of Section 1502 of the Code.  *See* Mark Lightner, *Determining the Center of Main Interest Under Chapter 15*, 17 J. BANKR. L. & PRAC. 5, art. 2 (2009).  In the bankruptcy context, the analysis must end with the text if the language is clear and does not lead to an absurd result.  *See, e.g.*, *United States v. Ron Pair Enters., Inc. (In re Ron Pair Enters.)*, 489 U.S. 235, 298 (1989). While Section 1502 does not expressly discuss a temporal framework for determining COMI, the grammatical tense in which it is written provides guidance to the court. Every operative verb is written in the present or present progressive tense. More specifically, Section 1502 defines foreign main proceeding as a "foreign proceeding pending in the country where the debtor *has* the center of its main interests." 11 U.S.C. § 1502(4).  Congress's choice to use the present tense requires courts to view the COMI determination in the present, i.e. at the time the petition for recognition was filed. If Congress had, in fact, intended bankruptcy courts to view the COMI determination through a lookback period or on a specific past date, it could have easily said so.  This is particularly significant because Congress is clearly capable of creating lookback periods in the Bankruptcy Code. *See, e.g.*, *id.* § 522 (b)(3)(A) (creating a lookback provision for property exemptions).

12

Moreover, examining a debtor's COMI at the time the petition for recognition is filed fulfills Congress's purpose for implementing Chapter 15. As noted above, Chapter 15 was implemented by Congress in an attempt to harmonize transnational insolvency proceedings. If we were to assess COMI by focusing upon Ran's operational history, there would be an increased likelihood of conflicting COMI determinations, as courts may tend to attach greater importance to activities in their own countries, or may simply weigh the evidence differently which may lead to the possibility of competing main proceedings, thus defeating the purpose of using the COMI construct. *See In re Betcorp Ltd.*, 400 B.R. at 290. In fact, a meandering and never-ending inquiry into the debtor's past interests could lead to a denial of recognition in a country where a debtor's interests are truly centered, merely because he conducted past activities in a country at some point well before the petition for recognition was sought. *See* Jay Lawrence Westbrook, *Locating the Eye of the Financial Storm*, 32 BROOK. J. INT'L L. 1019, 1020 (2007).

Additionally, it is important that the debtor's COMI be ascertainable by third parties. If the debtor's main interests are in a particular country and third parties observe this situation, it should be irrelevant that the debtor's interests were previously centered in a different country almost a decade prior to the receiver attempting to have the foreign bankruptcy proceeding recognized. *See In re Betcorp Ltd.*, 400 B.R. at 290. The presumption is that creditors will look to the law of the jurisdiction in which they perceive the debtor to be operating to resolve any difficulties they have with that debtor, regardless of whether such resolution is informal, administrative or judicial. This is consistent with English cases interpreting the European Union Regulation, which seem to select a time linked to the commencement or service of the relevant insolvency proceeding. *Shierson v. Vlieland-Boddy*, [2005] EWCA (Civ) 974, §§ 39, 55, 2005 WL 1860177

(Eng); *Re Collins & Aikman Corp. Group*, [2005] EWHC (Ch) 1754, § 39, 2005 WL 4829623 (Eng.).

Lavie urges the court to recognize the Israeli proceeding to effect the principles of comity and deference encompassed in Chapter 15 by deferring to the jurisdictional choice of the Israeli creditors. This argument has no merit. The plain language of Chapter 15 requires a factual determination with respect to recognition before principles of comity come into play. *See* 11 U.S.C. § 1507. By arguing comity without first satisfying the conditions for recognition, Lavie urges this court to ignore the statutory requirements of Chapter 15.

Lastly, we note that this case does not involve a recent change of domicile by the party in question. A similar case brought immediately after the party's arrival in the United States following a long period of domicile in the county where the bankruptcy is pending would likely lead to a different result.

In sum, the district court's denial of recognition of the Israeli bankruptcy proceeding as a foreign main proceeding is affirmed.

## D.    Determining Status as a Foreign Nonmain Proceeding

Although the Israeli bankruptcy proceeding is not a foreign main proceeding, our inquiry does not end there. We must next determine whether it may be recognized as a foreign nonmain proceeding. While recognition of a foreign proceeding as a foreign nonmain proceeding may provide the same relief as recognition as a foreign main proceeding, the relief is not automatic; rather, whether any such relief is appropriate is determined by the bankruptcy court after notice and a hearing, at the court's discretion, and subject to the requirement that all creditors be sufficiently protected. *See* 11 U.S.C. § 1521.

Lavie argues that the administration of Ran's bankruptcy estate in Israel is itself an establishment within the meaning of Chapter 15 and that it therefore should be recognized as a foreign nonmain proceeding. Notably, no United States court has decided whether an individual's bankruptcy proceeding pending

in another country and related debts alone are sufficient to constitute an establishment under Chapter 15. A foreign nonmain proceeding is "a foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an *establishment*." 11 U.S.C. § 1502(5) (emphasis added). Section 1502(2) defines an establishment as "*any place of operations* where the debtor carries out a *nontransitory economic activity*." *Id.* § 1502(2) (emphasis added). In contrast to COMI, "[t]he existence of an establishment is essentially a factual question, with no presumption in its favor." *In re Bear Stearns*, 389 B.R. at 338. As one court noted, "the bar is rather high" to prove that a debtor has an establishment in a particular location. *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 131 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2007).

Similar to a determination of Ran's COMI, the relevant time period to determine whether Ran has an establishment in Israel is at the time Lavie filed his petition for recognition. Our conclusion is again supported by a plain language reading of Chapter 15, which notes that a foreign nonmain proceeding can exist where a debtor "*has* an establishment." 11 U.S.C. § 1502(5) (emphasis added). Likewise, Section 1502(2) refers to an establishment as "any place of operations where the debtor *carries* out a nontransitory activity." *Id.* § 1502(2) (emphasis added). The use of the present tense implies that the court's establishment analysis should focus on whether the debtor has an establishment in the foreign country where the bankruptcy is pending at the time the foreign representative files the petition for recognition under Chapter 15. *See* Mark Lightner, *Determining the Center of Main Interest Under Chapter 15*, 17 J. BANKR. L. & PRAC. 5, art. 2 (2009).

So in order for Ran to have an establishment in Israel, Ran must have (1) had a place of operations in Israel and (2) been carrying on nontransitory economic activity in Israel at the time that Lavie brought the petition for

recognition in the United States. Neither Chapter 15 nor its legislative history explain what it means for a debtor to have "any place of operations" or to have "been carrying on nontransitory economic activity" in a location. *See* H.R. Rep. No. 109-31(I), at 107, *reprinted in* 2005 U.S.C.C.A.N. at 170 (mentioning only that the definition was taken from Model Law for Cross-Border Insolvency Article 2). However, the Model Law for Cross-Border Insolvency and the sources from which it emanates provide guidance concerning what it means for a debtor to have an establishment in a location.

The drafters of the Model Law for Cross-Border Insolvency relied on the EU Convention to define an establishment. *See* Guide to Enactment of the UNCITRAL Model Law on Cross-Border Insolvency § 75 (1997). Per the EU Convention's legislative history, in order to have a "place of operations" in Israel Ran must have had "a place from which economic activities are exercised on the market ( i.e. externally), whether the said activities are commercial, industrial or professional" at the time that Lavie filed the petition for recognition. COUNCIL REPORT ON THE CONVENTION ON INSOLVENCY PROCEEDINGS, at 49, No. 6500/96. The mere presence of assets in a given location does not, by itself, constitute a place of operation. *Id*. at 48. In the context of corporate debtors, there must be a place of business for there to be an establishment. *In re Bear Stearns*, 374 B.R. at 131; *see also* Daniel M. Glosband, *SPhinX Chapter 15 Opinion Misses the Mark*, 25 AM. BANKR. INST. J. 44, 45 (Dec./Jan. 2007). Equating a corporation's principal place of business to an individual debtor's primary or habitual residence, a place of business could conceivably align with the debtor having a secondary residence or possibly a place of employment in the country where the receiver claims that he has an establishment. *See* 11 U.S.C. § 1516(c) (equating a corporate debtor's registered office with the habitual residence in the case of an individual). At the time Lavie filed his petition for recognition, Ran possessed neither a secondary residence nor place of employment in Israel.

Even if the court were to conclude that Ran possessed a place of operations in Israel at the time the petition was filed, Ran did not carry out any nontransitory economic activity in Israel and as a result the second part of the establishment requirement is not met. Since Ran's departure from Israel in 1997, he has engaged in almost no economic activity in that country; rather, the evidence suggests that almost all of his economic activities are centered in Houston and Harris County, Texas. At the time Lavie brought his suit for recognition of the foreign bankruptcy proceeding the Israeli insolvency proceedings, brought involuntarily and in Ran's absence, and corresponding debts were the only evidence of Ran's purported establishment in Israel. These debts, however, only represent evidence of previous economic activity and are insufficient to show that Ran carried on transitory activity in Israel at the time the petition for recognition was filed. Nevertheless, Lavie argues that as trustee of Ran's estate there exists a principal-agent relationship between himself and Ran and that he has carried out economic activity in Israel on behalf of Ran, his principal. The law is clear—Lavie as the trustee of Ran's estate is not Ran's agent and cannot act on behalf of Ran. *See* 11 U.S.C. § 323.

Further, as the district court noted, recognition based on the existence of the bankruptcy proceeding and debts alone poses problems. First, a bankruptcy proceeding is by definition a transitory action, but recognition as a nonmain proceeding requires that the debtor carry out nontransitory activity in a location. WEBSTER's NEW INTERNATIONAL DICTIONARY 2692 (2d ed. 1939) (defining "transitory action" as "[a]n action which may be brought in any country, [such] as actions for debts, etc."). To permit a transitory action, i.e., the existence of the Israeli bankruptcy proceeding and corresponding debts alone to constitute the basis for finding nontransitory economic activity, would be inappropriate because it would go against the plain meaning of the statute. Second, if Ran's bankruptcy proceeding and associated debts, alone, could suffice to demonstrate

17

an establishment, this would render the framework of Chapter 15 meaningless. There would be no reason to define establishment as engaging in a nontransitory economic activity. The petition for recognition would simply require evidence of the existence of the foreign proceeding. But the statute requires more than that—it requires evidence of a foreign proceeding and that the proceeding meet the definition of foreign nonmain proceeding. Lavie's argument that Chapter 15 would not apply to any individuals if the Israeli bankruptcy is not an establishment, making Chapter 15 a nullity, is unconvincing. Debtors with ongoing business operations located in the country where the foreign proceeding is pending would be subject to Chapter 15. Finding that a foreign proceeding itself is not an establishment does not make Chapter 15 a nullity.

In sum, the district court's denial of recognition of the Israeli bankruptcy proceeding as a foreign nonmain proceeding is affirmed.

### III. CONCLUSION

This court does not attempt to define the scope of possible activities that would suffice in demonstrating the existence of an individual debtor's COMI or establishment in a particular location. Rather, we conclude only that on the record before us today Lavie's petition for recognition is insufficient to support a finding that Ran's COMI or establishment are located in Israel. Therefore, the district court's denial of recognition of the Israeli proceeding as a foreign main or nonmain proceeding is AFFIRMED.

No. 09-20288