In re MILLENNIUM GLOBAL EMERGING CREDIT MASTER FUND LIMITED, et al., Debtor in Foreign Proceedings.

In re Millennium Global Emerging Credit Fund Limited, et al., Debtor in Foreign Proceedings.

No. 11 Civ. 7865 (LBS).
Bankruptcy No. 11–13171 (ALG).

United States District Court,
S.D. New York.

June 25, 2012.

Patti Elaine Evans, Isaacs & Evans, LLP, New York, NY, Jimmy Fokas, Marc Dennis Powers, Oren J. Warshavsky, Baker & Hostetler LLP, New York, NY, for Appellant.

Robert Konstantine Dakis, Quinn Emanuel, New York, NY, for Debtor.

Scott C. Shelley, Quinn Emanuel, New York, NY, for Appellee.

### *MEMORANDUM & ORDER*

SAND, District Judge.

BCP Securities, LLC ("BCP") appeals from a September 19, 2011 Order entered by Hon. Allan L. Gropper of the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"), granting the petition filed by Michael W. Morrison ("Morrison"), Charles Thresh, and Richard Heis (the "Foreign Representatives"), the court-appointed Joint Liquidators of the Millennium Global Emerging Credit Master Fund Limited (the "Master Fund") and Millennium Global Emerging Credit Fund Limited (the "Feeder Fund") (collectively, "the Funds"), seeking recognition of Bermuda liquidation proceedings involving the Funds under Chapter 15 of the Bankruptcy Code, 11 U.S.C. § 1501 *et seq.* Having reviewed the history of these proceedings, the parties' submissions, and the decision of the Bankruptcy Court, we affirm.

## I. Background

The Feeder Fund and the Master Fund are two offshore investment funds that invested in sovereign and corporate debt instruments from issuers in developing countries. Declaration of Michael Morrison ("Morrison Decl.") at ¶ 4. The Feeder Fund was incorporated in Bermuda in 2006. *Id.* at ¶ 12. The Master Fund was incorporated in Bermuda in 2007. *Id.* at ¶ 19. Both funds share the same three-member Board of Directors. *Id.* at ¶¶ 15, 45. After the Master Fund was incorporated, the Feeder Fund transferred substantially all of its assets to it, in exchange for a 97% ownership interest in the Master Fund. All of the Feeder Fund's service agreements were novated in favor of the Master Fund. *Id.* at ¶ 20.

In October 2008, the Funds ran into severe cash flow problems and, as a result, failed to meet margin calls issued by Credit Suisse, one of the Funds' two prime brokers. *Id.* at ¶ 25. Credit Suisse issued a default notice against the Funds on October 16, 2008. *Id.* The same day, the Funds' directors petitioned the Supreme Court of Bermuda, Commercial Court ("the Bermuda Court"), for permission to wind-up the Funds. *Id.* at ¶ 26. On November 21, 2008, the Bermuda Court granted this request and, in March and April 2009, it appointed the Foreign Rep-

resentatives as liquidators of both Funds. *Id.* at ¶¶ 27–29.

Following their appointment, the Foreign Representatives began an investigation into the Funds' financial affairs. *Id.* at ¶¶ 27–29. Upon discovering discrepancies in the valuation of certain of the Funds' assets, they sought informal discovery from various U.S. based entities. These attempts to negotiate the informal production of relevant documents failed. *Id.* at ¶ 54. In order to facilitate their investigation into the Funds' financial affairs, the Foreign Representatives filed a chapter 15 petition with the Bankruptcy Court, seeking recognition of the Bermuda liquidation proceedings as a foreign main proceeding or, in the alternative, as a foreign nonmain proceeding, pursuant to 11 U.S.C. § 1517(b). Verified Petition of Foreign Representatives Michael W. Morrison, Charles Thresh and Richard Heis (Bankr. S.D.N.Y. June 30, 2011).

After a one-day hearing on the recognition petition, the Bankruptcy Court issued an order, recognizing the Bermuda proceedings as a foreign main proceeding pursuant to 11 U.S.C. § 1517(b)(1). *In re Millennium Global Emerging Credit Master Fund Ltd.* ("*In re Millennium*"), 458 B.R. 63, 83 (Bankr.S.D.N.Y.2011). The Bankruptcy Court also affirmed, at the Foreign Representatives' request, that § 108 of the Bankruptcy Code applies to Chapter 15 proceedings such as the instant case. *Id.* at 71. BCP, one of the U.S. based entities targeted by the Foreign Representatives' investigation regarding the discrepancies in the Funds' asset valuations, appeals both holdings.

## II. Standard of Review

District courts are vested with appellate jurisdiction over bankruptcy court rulings pursuant to 28 U.S.C. § 158(a). On appeal, the court "may af-firm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr.P. 8013. Findings of fact are reviewed for clear error, and conclusions of law are reviewed *de novo*. *Morgan Olson L.L.C. v. Frederico* (*In re Grumman Olson Indus.*), 467 B.R. 694, 699 (S.D.N.Y.2012). Evidentiary rulings are reviewed for abuse of discretion. *Automodular Corp. v. Delphi Corp.*, 394 B.R. 342, 344 (S.D.N.Y.2008).

## III. Discussion
### A. The COMI Analysis

Chapter 15 of the Bankruptcy Code governs the recognition by U.S. courts of foreign proceedings. Section 101(23) of the Bankruptcy Code defines a foreign proceeding as "a collective judicial or administrative proceeding in a foreign country ... under a law relating to insolvency ... in which ... the assets and affairs of the debtor are subject to control or supervision by a foreign court for the purpose of ... liquidation." 11 U.S.C. § 101(23). Section 1517(b) provides that a foreign proceeding "shall be recognized ... if it is pending in the country where the debtor has the center of its main interests; or ... if the debtor has an establishment within the meaning of section 1502 in the foreign country where the proceeding is pending." 18 U.S.C. § 1517(b). In the first case, the foreign proceeding will be recognized as a "foreign main proceeding." In the second case, it will be recognized as a "foreign non-main proceeding." *Id.*

It is the petitioner's burden to persuade the Bankruptcy Court by a preponderance of the evidence that the debtor's center of main interests ("COMI") is the location of the foreign proceedings or, in the alternative, that the debtor has an establishment in that place. *In re Fairfield Sentry Ltd.*, 2011 WL 4357421, at *3,

No. 10 Civ. 7311(GBD), 2011 U.S. Dist. LEXIS 105770, at *9 (S.D.N.Y. Sept. 15, 2011); *In re Bear Stearns High–Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 335 (S.D.N.Y.2008). Section 1516 of the Bankruptcy Code establishes a presumption that a debtor's COMI is its registered office or the debtor's habitual residence, if the debtor is an individual. 11 U.S.C. § 1516(c). This presumption applies, however, only "[i]n the absence of evidence to the contrary." *Id.* Where evidence is presented to the contrary, the court cannot rely solely upon this presumption, but rather must consider all of the relevant evidence. *In re Fairfield Sentry Ltd.*, 2011 WL 4357421, at *3, 2011 U.S. Dist. LEXIS 105770, at *9.

In its ruling on the recognition petition, the Bankruptcy Court reached two holdings with respect to the COMI of the Funds. First, it concluded, based on a review of the text and legislative history of Chapter 15, as well as the Model Law on Cross–Border Insolvency, on which Chapter 15 was modeled, that the COMI should be determined as of the date of the commencement of the foreign proceeding, rather than—as most of the courts that have looked at the issue have concluded—the date on which the Chapter 15 petition was filed. *In re Millennium*, 458 B.R. at 75–76. Second, the Bankruptcy Court concluded that a preponderance of the evidence supported the Foreign Representatives' claim that the COMI of the Funds, at the time the Funds entered into liquidation, was Bermuda. *Id.* at 83.

BCP does not challenge the Bankruptcy Court's conclusion with respect to the timing of the COMI analysis. It does, however, challenge the Bankruptcy Court's con-

clusion that the COMI of the Funds, as of the date of the commencement of the Bermuda Proceedings, was Bermuda.[1] It argues that the true COMI of the Funds was instead the United Kingdom, where the Funds' investment manager, one of their two prime brokers, many of their investors and counterparties, and their portfolio manager—the man responsible "on a day-to-day basis for the investment activities of the fund"—were located. Transcript of Recognition Hearing Held on July 27, 2011 ("Tr.") at 54. The fact that much of the day-to-day business of the Funds prior to their liquidation took place in the United Kingdom, BCP argues, means that it is the United Kingdom, and not Bermuda, that must be recognized as the COMI.

We do not agree. Although obviously important to the analysis of a debtor's COMI, the fact that much of the daily investment activities of the Fund were managed in the United Kingdom does not necessarily mean that the United Kingdom was, prior to liquidation, the center of the Funds' main interests. When determining the location of a foreign debtor's COMI, courts look at a variety of factors, including:

"[1] the location of the debtor's headquarters; [2] the location of those who actually manage the debtor (which, conceivably could be the headquarters of a holding company); [3] the location of the debtor's primary assets; [4] the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or [5] the jurisdiction whose law would apply to most disputes." *In re SPhinX*, 351 B.R. 103, 117 (Bankr.S.D.N.Y.2006), aff'd 371 B.R. 10 (S.D.N.Y.2007).

---

1. BCP does not challenge the Bankruptcy Court's alternative conclusion, that the Funds maintain an "establishment" in Bermuda, entitling the Bermuda proceedings to recogni-

tion as a foreign nonmain proceeding under § 1517(b)(2). *In re Millennium*, 458 B.R. at 85.

Courts also take into consideration the expectations of creditors and other interested third parties. *See In re Fairfield Sentry Ltd.*, 2011 WL 4357421, at *4, 2011 U.S. Dist. LEXIS 105770, at *10 (CITE); *In re SPhinX*, 351 B.R. at 117 (noting that courts should not apply the factors listed above "mechanically" but instead should interpret them "in light of chapter 15's emphasis on protecting the reasonable interests of parties in interest pursuant to fair procedures and the maximization of the debtor's value"). In order to protect the expectation interests of creditors, investors and other interested third parties, courts ask whether the debtor's COMI would have been "ascertainable" to interested third parties. *See Lavie v. Ran (In re Ran)*, 607 F.3d 1017, 1025 (5th Cir.2010) ("It is important that the debtor's COMI be ascertainable by third parties."); *In re Betcorp Ltd.*, 400 B.R. 266, 291 (Bankr.D.Nev.2009) ("[I]t is important that the debtor's COMI be ascertainable by third parties ... The presumption is that creditors will look to the law of the jurisdiction in which they perceive the debtor to be operating to resolve any difficulties they have with that debtor, regardless of whether such resolution is informal, administrative or judicial."); *Krys v. Official Comm. of Unsecured Creditors of Refco Inc. (In re SPhinX, Ltd.)*, 371 B.R. 10, 19 (S.D.N.Y.2007) (noting that "the COMI must be identified based on criteria that are: (1) objective; and (2) ascertainable by third parties").

Not all of these factors support the conclusion that Bermuda is the COMI of the Funds. The fact that the Funds retained a United Kingdom-based investment manager and portfolio manager and that much of the day-to-day management of the Funds investment activities therefore took place in the United Kingdom means that the second of the five *In re SPhinX* factor—"the location of those who actually manage the debtor"—favors the United Kingdom as the COMI of the Funds. The fact that Bermuda was not where the majority of the Funds' assets or creditors were located at the time of the commencement of the liquidation proceedings means that the third and fourth *In re SPhinX* factors also do not support Bermuda as the COMI of the Funds. However, because there is no evidence that a majority of either the creditors or assets of the Funds were located in the United Kingdom, these factors do not support the United Kingdom as the COMI either.

Many of the other factors do support the Bankruptcy Court's conclusion that Bermuda was the COMI of the Funds. The fact that Bermuda was where two of the three directors of the Funds resided, where telephone calls concerning the management of the Fund were initiated, and where corporate record books and accounts were maintained, Morrison Declaration ¶¶ 15, 45, leads us to conclude that Bermuda was where the Funds were headquartered. *See Hertz Corp. v. Friend,* — U.S. ——, 130 S.Ct. 1181, 1186, 175 L.Ed.2d 1029 (2010) (noting that a corporation's headquarters is typically "where the corporation's high level officers direct, control and coordinate the corporation's activities"). In addition, Bermudan law governed the establishment and operation of both Funds and—while the record is not entirely clear on this point—presumably would have governed the majority of disputes arising therefrom. Morrison Declaration ¶¶ 12, 13. Both the first and the last *In re SPHINX* factors thus support Bermuda as the COMI of the Funds.

Bermuda also appears to have been—as the Bankruptcy Court concluded—the only location that was ascertainable to investors and other interested third parties as the COMI of the Funds. *In re Millennium,*

458 B.R. at 77–78. In their offering materials, the Funds were described exclusively as Bermudan entities, governed by Bermudan law. *See, e.g.,* Dakis Decl. Ex. A at 11. In addition, when investors invested in the Funds, they did so by mailing money to a Bermudan address. When investors withdrew from the Funds, they did so by sending notice to a Bermudan entity and getting wire transfers from a Bermudan bank. Tr. at 106.

While other third parties—for example, the counterparties with whom the Funds entered into derivative agreements—may have engaged primarily, if not exclusively, with agents of the Fund located in the United Kingdom, these contacts alone were insufficient to create reasonable expectations that the COMI of the Funds was anywhere other than Bermuda. For one thing, whatever interactions third parties may have had with the Funds' agents in the United Kingdom, those agents were ultimately under the control and supervision of the predominantly Bermudan board of directors. Tr. at 95. In addition, the Offering Memorandum ("OM") goes to some effort to disavow any impression that the Funds were resident or operated in the United Kingdom. It states, for example, that: "The Directors of the [Feeder] Fund and the Master Fund intend to manage the affairs of the Fund and the Master Fund in such a way that neither the Fund nor the Master Fund is resident in the United Kingdom for … tax purposes … [nor will be] treated as carrying on a trade in the United Kingdom through a 'permanent establishment.'" Dakis Decl. Ex. A at 18. These facts lead us to conclude, for substantially the same reasons as the Bankruptcy Court, that investors and other third parties would have reasonably expected Bermuda to be the COMI of the Funds and, as such, also where they were liquidated or wound up.

We therefore agree with the Bankruptcy Court that, when considered in light of all the factors outlined above, a preponderance of the evidence supports the conclusion that Bermuda was the COMI of the Funds. We find this to be true regardless of whether the COMI is determined as of the date of the commencement of the liquidation proceedings—as the Bankruptcy Court held—or as of the date of the filing of the Chapter 15 petition. Indeed, we see no evidence to suggest any change in the location of the Funds' COMI with the commencement of liquidation proceedings. Bermuda is where the liquidation proceedings are taking place, under the supervision of the Bermuda Court. Morrison Declaration ¶ 5. Two of the three Joint Liquidators, responsible for managing the Funds during the process of liquidation, reside in Bermuda. *Id.* at ¶ 43. In addition, since the commencement of liquidation proceedings, the contractual relationship between the Funds and their U.K.-based investment manager ended, severing one of the main links between the Funds and the United Kingdom and therefore only strengthening the argument for Bermuda as the COMI of the Funds. *Id.*

Accordingly, we deny BCP's appeal to this aspect of the decision, without having to reach the rather more complicated question—which appellants do not raise—of whether the Bankruptcy Court was correct in its conclusion regarding the timing of the COMI determination.

### B. United States Public Policy

BCP also argues that the Bankruptcy Court violated the public policy of the United States when it refused to allow detailed questioning about a London arbitration involving the Funds during the one-day hearing on the recognition petition it held on July 27, 2011. *See* Tr. at 25 (limiting testimony about the arbitration as "wholly irrelevant to the only question be-

fore this court which is whether these proceedings should be recognized as foreign main proceedings").

Section 1506 of the Bankruptcy Code provides that "[n]othing in this chapter prevents the court from refusing to take an action governed by this chapter if the action would be manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506. BCP argues that, by limiting questioning about the arbitration during the hearing, the Bankruptcy Court violated United States public policy favoring openness and transparency in court proceedings. As a consequence, BCP argues, the Court's decision to grant recognition to the Bermuda Proceedings should be overturned or, at the least, vacated and remanded for reconsideration. In the alternative, BCP asks the Court to vacate the Bankruptcy Court's decision, order the Foreign Representatives to disclose information about the London arbitration to BCP, and remand the case for reconsideration to the Bankruptcy Court.

 This argument is not persuasive, for a number of reasons. First, as a threshold matter, the public policy exception to the Bankruptcy Code is a narrow one. *In re Fairfield Sentry Ltd.*, 2011 WL 4357421, at *8, 2011 U.S. Dist. LEXIS 105770, at *24 (noting that "courts have agreed that Congress's use of the word 'manifestly' requires the statute to be interpreted restrictively"). It applies only to actions that violate "the most fundamental policies of the United States." *In re RSM Richter Inc. v. Aguilar (In re Ephedra Prods. Liab. Litig.)*, 349 B.R. 333, 336 (S.D.N.Y.2006) ("In adopting Chapter 15, Congress instructed the courts that the exception provided therein for refusing to take actions 'manifestly contrary to the public policy of the United States' should be 'narrowly interpreted,' as '[t]he word "manifestly" in international usage re-

stricts the public policy exception to the most fundamental policies of the United States.'" (quoting H.R.Rep. No. 109–31(1) at 109)).

 The policy favoring openness in the courtroom is not such a policy. As the Court of Appeals for the Second Circuit has held, although public policy strongly favors public access to court records and proceedings, "the right is not absolute. . . . In limited circumstances, courts must deny access to judicial documents—generally where open inspection may be used as vehicle for improper purposes." *In re Orion Pictures Corp.*, 21 F.3d 24, 26–27 (2d Cir.1994).

 Furthermore, even if the public policy favoring openness in the courtroom were a fundamental policy of the United States, the public policy exception would not apply here because, whatever the policy favoring openness in the courtroom may mean, it does *not* mean that a trial court judge is obligated to allow into evidence testimony that he believes irrelevant to the dispute being argued. To the contrary: trial courts have broad discretion to determine when evidence is relevant to a given proceeding and to refuse to admit evidence it believes to be irrelevant or whose probative value is outweighed by the risk of undue delay or waste of time. F.R. Evid. 401, 403. District courts may, for this reason, overturn a Bankruptcy Court's evidentiary decision only when they find that the Bankruptcy Court's decision "rests on an error of law . . . or a clearly erroneous factual finding, or . . . cannot be located within the range of permissible decisions." *Daly v. Richardson (In re Richardson)*, CITE, 2004 WL 2211726, *2, 2004 U.S. Dist. LEXIS 19635, *7–8 (D.Conn. Sept. 28, 2004) (quoting *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir.2001)). To be reversible, the error must also "affect a party's substan-

tial rights." *Schering Corp. v. Pfizer Inc.,* 189 F.3d 218, 224 (2d Cir.1999).

Other than its public policy argument, BCP provides no reason why the Bankruptcy Court's decision to exclude testimony relating to the London arbitration during the one-day hearing reflected an "error of law . . . or a clearly erroneous factual finding," let alone that it affects BCP's "substantial rights." Nor does the decision appear to be beyond "the range of permissible decisions." BCP's appeal is accordingly denied.

### C. Applicability of Rule 108 Relief

Finally, BCP challenges the Bankruptcy Court's conclusion that § 108 of the Bankruptcy Code applies to this case, as a Chapter 15 proceeding. Section 108 extends the limitation periods in which certain classes of debtors may commence an action, file a pleading, or perform other acts governed by the Bankruptcy Code. 11 U.S.C. § 108. In arguing that the Bankruptcy Court was incorrect when it concluded that § 108 applies to the instant case, BCP essentially recycles the same arguments it made against the Court's evidentiary decision. It argues that relief under § 108 should not be available to the Foreign Representatives because the Foreign Representatives' refusal to disclose details of the arbitration, and their more general failure to "provide full and honest disclosure of [the Funds] assets, . . . violate[s] United States public policy and abuse[s] the very purpose of Chapter 15 comity." Appellants Opening Br. at 24–25.

This argument has no merit. As we concluded above, the failure to disclose information during the recognition hearing about the arbitration proceeding was not a violation of U.S. public policy. Nor, for

the same reason, is it an abuse of the purpose of Chapter 15 comity. The Foreign Representatives' had no obligation to provide evidence during the recognition hearing that the Bankruptcy Judge found to be "wholly irrelevant to the only question before [him]"—namely, the question of the Bermuda proceedings recognition under § 1517(b). Tr. at 25.

In addition, BCP fails to allege any facts to support their allegation that the Foreign Representatives otherwise failed to provide full and honest disclosure of the Funds' assets otherwise.

BCP's appeal is denied.

## IV. Conclusion

For the foregoing reasons, the decision of the Bankruptcy Court for the Southern District Court of New York is AFFIRMED.[2]

SO ORDERED.

---

**2.** The Court has considered all of the parties' other arguments and found them to be moot

or without merit.